491 So.2d 464 (1986)
STATE of Louisiana, Plaintiff-Appellee,
v.
Terry Wayne FARRIS, Defendant-Appellant.
No. CR 85-307.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
*465 Douglas L. Hebert, Jr., Kinder, Perrell Fuselier, Oakdale, for defendant-appellant.
Alfred R. Ryder, Dist. Atty., John A. Duck, Jr., Asst. Dist. Atty., Oakdale, for plaintiff-appellee.
Before STOKER and YELVERTON, JJ., and BERTRAND, J. Pro. Tem.[*]
YELVERTON, Judge.
The defendants, Terry Wayne Farris and Charles Ray Foster, were originally indicted for armed robbery in violation of La.R.S. 14:64 and first degree murder in violation of La.R.S. 14:30. The State later amended the murder charge to second degree murder in violation of La.R.S. 14:30.1. The defendants were tried together and a twelve member jury found both guilty as charged. Each defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence on the second degree murder charge, and 25 years on the armed robbery charge without benefit of parole, probation, or suspension of sentence, 10 years to run concurrently with the life sentence and 15 years to run consecutively. Defendant, Charles Ray Foster, appeals relying on one assignment error. Defendant, Terry Wayne Farris, appeals arguing two assignments of error. He briefed a third, but failed to make a contemporaneous objection at trial, and cannot avail himself of it. La.C.Cr.P. art. 841; State v. Ellwest Stereo Theaters, Inc., 412 So.2d 594 (La.1982). Our reasons for decision in both cases are given in this opinion. A separate judgment is being rendered *466 this date in State v. Foster, 491 So.2d 469 (La.App. 3rd Cir.1986).

FACTS
On September 10, 1983, the victim, Freddie Thompson, went to Alexandria to visit his brother, Reginald Thompson, whom he had not seen for several years. A couple of hours after Freddie's arrival, the two men left their wives and children at Reginald's house and went for a ride in Freddie's car with Reginald driving. The men had a couple of beers along the way and eventually ended up in Oakdale about an hour later. According to Reginald, he knew a lot of girls from Oakdale and he was there to fool around. Reginald parked near a ballpark across the street from some apartments to finish his beer, because he did not have his driver's license and was also driving while drinking. About five minutes later the defendants approached the car. Terry Wayne Farris went to the passenger side and Charles Ray Foster approached the driver's side. Farris and Foster first asked the victim and his brother if they wanted to buy any drugs. The Thompsons said no. Then Farris pulled a gun on Freddie and said, "Up the money." In the meantime Foster had pulled a gun on Reginald. Freddie began tussling with Farris and was shot. Reginald tried to run away but Foster ordered him to halt. Reginald was forced to take the wallet out of Freddie's back pocket and give the money to Foster. Reginald pled for his own life and asked to be allowed to take his brother to the hospital. The defendants told him to get in the car and get out of town. Reginald drove his brother to the Huey Long Memorial Hospital, where Freddie died.

CHARLES RAY FOSTER
This defendant's single assignment of error questions the sufficiency of the evidence to convict him. More specifically, the defendant argues that he was convicted entirely on the testimony of Reginald Thompson, and that this witness was inconsistent and unbelievable. The argument places special emphasis on the fact that Thompson testified that his brother was shot with a black gun, while expert Charles Ellis testified that the bullet which killed Freddie Thompson came from a certain .38 caliber Taurus stainless steel gun.
Although Reginald Thompson said that the day of the murder was the first time he had visited Oakdale, defense witness Norris White testified that he had seen Thompson in Oakdale in a Delta 88 at the corner of Crestwell and Harvey several weeks before the shooting. He said that at the time he did not know who Reginald Thompson was. A defense witness testified that he saw Charles Ray Foster before he heard the gunshots. Foster was apparently on his way to visit his girl friend, Zina Calhoun. Zina testified that she was with him from before sunset on the night of the murder until around 4:00 A.M. the next morning. She said the only time that night they were not together was when he went to her cousin Earline's house and when she went to the house to get some cups. She remembered seeing a car that matched the description of the victim's car and also hearing a shot that night.
Gwendolyn Wallace testified that she had seen Reginald Thompson in Oakdale prior to the date of the incident, and that defendant, Charles Foster, came over to her house several times the night of the killing to drink water, use the bathroom and discuss a get-together. The first time he came to her house was around 1:00 P.M., and the last time was around 7:30 or 8:00 P.M.
The jury obviously believed the testimony of Reginald Thompson, despite the fact that he had the color of the gun wrong, and despite the various defense witnesses' testimony.
Credibility of witnesses is uniquely the function of the finder of fact. In the case of State v. Trosclair, 443 So.2d 1098 (La.1983), our Supreme Court held:
"[I]t is not our function to assess credibility or reweigh the evidence. Our review for minimal constitutional sufficiency of evidence is a limited one which ends upon our finding that the rational trier-reasonable doubt standard has been satisfied."
*467 See also State v. Wright, 410 So.2d 1092 (La.1982); State v. Klar, 400 So.2d 610 (La.1981), and State v. Porter, 454 So.2d 220 (La.App. 3rd Cir.1984), writ denied, 457 So.2d 17 (La.1984). We may not, therefore, find incredible the testimony of a witness who was found credible by the jury. We will not disturb this finding.
The appellate standard of review for the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and requires that the evidence, when viewed in the light most favorable to the prosecution, must be sufficient for a rational trier of fact to conclude that the essential elements of the crime were established beyond a reasonable doubt.
La.R.S. 14:30.1 defines second degree murder as follows:
"§ 30.1 Second degree murder
"Second degree murder is the killing of a human being:
"(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm."
A principal is defined by La.R.S. 14:24 thusly.
"§ 24. Principals
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
Persons who aid and abet in the commission of a crime are guilty as principals although they do not directly commit the act constituting the offense. State v. Bernard, 441 So.2d 817 (La.App. 3rd Cir.1983).
A person who is a principal in an armed robbery is criminally responsible for any killing which results from its perpetration or attempted perpetration. See State v. Johnson, 365 So.2d 1267 (La.1978).
Armed robbery is defined by La.R.S. 14:64(A.) as follows:
"§ 64. Armed robbery
"A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
Reginald Thompson testified that when he and his brother told Farris and Foster that they did not want to buy any drugs, Farris pulled a gun on Freddie while Foster pulled a gun on Reginald. Farris said, "Up the money" and when Freddie began tussling with him Farris shot him. Reginald tried to run away, but Foster ordered him to halt and instructed him to remove Freddie's wallet and give the money to Foster. When Reginald gave the money, over $500, to Foster, Foster and Farris briefly fought over it. Finally, the two men told Reginald to get in the car and get out of town. This evidence meets the Jackson standard of review. Foster's assignment of error lacks merit.

TERRY WAYNE FARRIS
Assignment of Error No. 1.
This assignment asserts that the trial court erred in failing to allow him to use Reginald Thompson's grand jury testimony on cross-examination for the purpose of impeaching the State's witness. Apparently, the district attorney was holding a copy of Mr. Thompson's grand jury testimony while he examined the witness on direct. According to defendant, the court's refusal of defendant's request gave the State an unfair advantage over defendant, Farris.
Grand jury proceedings are secret, La.C.Cr.P. art. 434(A), and the secrecy of such proceedings is not to be broken absent compelling necessity. A party seeking disclosure of grand jury proceedings must prove that without such access his case *468 would be greatly prejudiced or that an injustice would be done. In other words, a particularized need must be demonstrated. The court makes its determination by balancing the continuing need for secrecy against the particular need for disclosure. Disclosure is left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. State v. Trosclair, 443 So.2d 1098 (La.1983).
In the instant case, defendant said that he wanted to use Thompson's grand jury testimony to show discrepancies with his testimony at trial. Defendant said that having never seen the grand jury testimony, he could not demonstrate any particular discrepancy in the testimony. The trial court then read the transcript of Reginald Thompson's grand jury testimony and found no conflict. Because of the trial court's in camera determination, there was no abuse of discretion in refusing to give defendant a copy of the grand jury testimony to be used in his cross-examination. This assignment of error has no merit.
Assignment of Error No. 2
We are not certain whether this assignment is aimed at the failure of the trial court to admonish the jury after the denial of a mistrial, or at the trial court's failure to grant a mistrial. We will address both. During his testimony before the jury police officer Bob Smith allegedly referred to defendant Farris' prior criminal activity. This defendant's request for a mistrial was denied. The complained of testimony was the following question by the State about Farris, and the police officer's response:
"Q. And approximately how long had you known him?
"A. I've been dealing with him now about five years ..."
Grounds for a mandatory mistrial are given in La.C.Cr.P. art. 770 which reads in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;"
A reference, direct or indirect, to another crime committed or alleged to have been committed by the defendant, or to which evidence is not admissible, made by the judge, district attorney or a court official, within the hearing of the jury, during the trial or in argument, would require a mistrial. The Louisiana Supreme Court has held that for purposes of La.C.Cr.P. art. 770, a police officer is not a "court official." Therefore, even if the officer makes reference to another crime, a mistrial under La.C.Cr.P. art. 770 is not required. State v. Hayes, 414 So.2d 717 (La. 1982); State v. Carter, 412 So.2d 540 (La. 1982).
When a remark regarding prior crimes is made by someone other than the judge, district attorney or court official, an admonition is required under La.C.Cr.P. art. 771, which provides:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770." (Emphasis added.)
To trigger the need for an admonition, the remark must be an unambiguous reference *469 to crimes alleged to have been committed by the defendant. State v. Hayes, supra; State v. Henry, 461 So.2d 484 (La. App. 3rd Cir.1984), writ denied 464 So.2d 313 (La.1985). The remark by Officer Smith that he had been dealing with the defendant for about five years was not an unambiguous reference to crimes alleged to have been committed by the defendant; therefore, there was no need for an admonition to be given to the jury.
Even assuming that an admonition would have been necessary, the trial judge did not err in failing to give one because the defendant did not request one. La.C. Cr.P. art. 771; State v. Gilmore, 332 So.2d 256 (La.1976); State v. Knight, 323 So.2d 765 (La.1975).
For the foregoing reasons, this assignment is without merit.
The conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr. of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.