596 So.2d 218 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Debra Jean MAZE, Defendant-Appellant.
No. Cr91-494.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
*219 W. Charles Brown, Mansfield, for defendant-appellant.
Don Burkett, Dist. Atty., Many, for plaintiff-appellee.
Before DOUCET, KNOLL and HOOD,[*] JJ.
WARREN E. HOOD, Judge Pro Tem.
Defendant, Debra Jean Maze, was charged by bill of information with distribution of cocaine, a violation of La.R.S. 40:967 A. Defendant was accused of selling two (2) rocks of cocaine for twenty-five dollars each to an undercover agent who was wearing a recording wire. The drug transaction took place in defendant's apartment in the Apollo Apartments, a complex in Many, Louisiana. On January 14, 1991, a jury found the defendant guilty as charged. She was subsequently sentenced to eight (8) years at hard labor. Defendant now appeals her conviction, urging five (5) assignments of error. Assignment of Error No. 5 was not briefed and is therefore considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); Uniform RulesCourts of Appeal 2-12.4.

ERROR PATENT REVIEW
The record does not indicate whether the jury was sequestered after the jury charges were read. La.C.Cr.P. art. 791 provides:
A. A jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication.
B. In capital cases, after each juror is sworn he shall be sequestered.
C. In noncapital cases, the jury shall be sequestered after the court's charge, and may be sequestered at any time upon order of the court. (Emphasis supplied.)
Noncompliance with the mandatory provisions of the article is an error patent on the face of the record, reviewable even without formal objection or motion. State v. Parker, 372 So.2d 1037 (La.1979).
The purposes of sequestration are to insulate the jurors from outside influence, or the possibility thereof, and to insure that their verdict will be based upon the evidence developed at trial. State v. Parker, supra; State v. Marchand, 362 So.2d 1090 (La.1978). So strictly is the prophylactic rule enforced that upon separation of the jury a presumption of prejudice arises which may only be rebutted if it affirmatively appears that no prejudice to the accused could have resulted. See, State v. Parker, supra; State v. Marchand, *220 supra; State v. Willis, 371 So.2d 1327 (La.1979). However, in a later case, State v. Miller, 391 So.2d 1159 (La. 1980), wherein the trial judge allowed the jurors to read the newspaper and watch television during defendant's trial, the court noted that defendant did not assert that he had been prejudiced. Rather, defendant requested that the court presume prejudice. The court found such a presumption to be unwarranted and, in citing La.C.Cr.P. art. 921, held that because no prejudice had been shown, any error was harmless.
In the instant case, the record reflects that the jury retired to consider its verdict at 5:25 p.m. and returned at 5:58 p.m., having reached a verdict. It is submitted that in this short of a time span, it affirmatively appears that no prejudice to the defendant could have resulted. Moreover, there were no allegations or proof of attempted communication with or influencing of the jury in violation of art. 791.
In a recent case, State v. Hill, 562 So.2d 12 (La.App. 5th Cir.1990), the court held that the mandate of art. 791 to sequester the jury after the court's charge must be complied with or it is reversible error. However, that case is distinguishable because the jury was released overnight during deliberation. Because no prejudice has been shown in the instant case, we find that any error here was harmless. La. C.Cr.P. art. 921; State v. Miller, supra.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment of error, defendant alleges that the trial court erred in failing to grant a mistrial when Detective James McComic of the Sabine Parish Sheriff's Office had unresponsive testimony at trial about a prior burglary arrest of defendant.
Detective McComic testified for the state as one of the officers involved with the undercover operation which resulted in the arrest of the defendant. Detective McComic testified under direct examination, cross-examination, redirect examination, recross examination, then redirect examination again and a follow-up recross examination. The questioning by defense counsel focused on whether the police had defendant's correct apartment number and whether they were able to identify the defendant as being the actual person who sold the drugs. A confidential informant was the source of information for defendant's address. Deputy Kevin Stafford of the Natchitoches Parish Sheriff's Office had testified that he was told to assist in an undercover operation to purchase drugs from certain dealers. He proceeded to the Apollo Apartments where defendant was living. Deputy Stafford stated that defendant's apartment number was E-80. Detective McComic, who was also involved in the undercover operation, then testified that defendant was living at apartment number E-80. However, he later remembered that the number was E-8 and that he must have accidentally typed E-80 on the report from which he had been reading and refreshing his memory before trial began. McComic knew that the apartment numbers do not reach as high as 80 in defendant's complex.
The state's second redirect examination elicited information that Detective McComic knew defendant prior to that night and knew where she lived. Subsequent recross examination by defense counsel was directed toward confirming what the deputy knew or did not know, and defense counsel asked the following question:
So you knew, or should have known, the addressthe address of the apartment, who your target was, the description
In response to that question, Detective McComic answered as follows:
Yes, I've arrested her before on burglary.... I know her well.
The defense counsel moved for a mistrial after Detective McComic's response and the court entertained argument outside the presence of the jury. During the interim recess, the trial court researched the issue and obtained a transcript of the last several questions by defense counsel on cross-examination. The trial court found the response to be unresponsive but found the granting of a mistrial was not mandatory; rather, it was in the discretion of the trial court. The trial court chose to admonish *221 the jury, which it did, and satisfied itself that the jury would disregard the remark.
The comment made by Detective McComic alluded to defendant's prior arrest for an unrelated charge. La.C.Cr.P. art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
* * * * * *
The state contends that art. 770 is not applicable because the remark was made by a police officer and that it is well settled that for purposes of art. 770, a police officer is not a court official. State v. Farris, 491 So.2d 464, 468 (La.App.3d Cir.1986); State v. Hayes, 414 So.2d 717, 721 (La. 1982). Instead, the state alleges that the issue should be governed by La.C.Cr.P. art. 771, which provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In State v. Smith, 418 So.2d 515 (La. 1982), defendant moved for a mistrial after a police officer testified regarding a police bulletin concerning a different robbery earlier the same evening. The Louisiana Supreme Court stated that defendant's relief was pursuant to art. 771 since the statement was made by a witness, not a court official. The court held:
Mistrial under that section is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. Moreover, mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused.
Further, in State v. Fuselier, 474 So.2d 556, 560 (La.App.3d Cir.1985), this court found no prejudice to the defendant when the officer's remark "was only a reference to a previous arrest and was made without elaboration."
In State v. Tribbet, 415 So.2d 182, 184 (La.1982), the police officer, while testifying on cross-examination by defense counsel, alluded to other crimes or arrests of the defendant. The supreme court reiterated its position that the state cannot be charged with testimony elicited by defense counsel implying that defendant had previously committed other crimes, and the defendant cannot claim reversible error on the basis of that which he elicited.
Defendant cites two cases in support of her argument that a mistrial is appropriate where an experienced police officer implicates defendant in unrelated crimes. State v. Schwartz, 354 So.2d 1332 (La.1978) and State v. Douglas, 389 So.2d 1263 (La.1980). However, Schwartz involved the recurrence of unresponsive answers by a police officer in other cases. Also, the answer was elicited by the state. In Douglas, the court stated that a prejudicial remark by a police officer may require granting a mistrial, especially if the remark was precipitated by or should have been anticipated by the state. The court went on to state that the decision of whether to grant a *222 mistrial was left to the sound discretion of the trial court.
In the instant case, Detective McComic's response, although unresponsive, was made without elaboration. Further, the trial judge admonished the jury and satisfied herself that the jurors would disregard the remark. The cases cited by defendant did not mandate a mistrial, and involved situations where the state had elicited the improper remark. In this case, defense counsel was questioning Detective McComic when he referred to defendant's prior arrest. Under Tribbet, supra, the state cannot be charged with testimony elicited by defense counsel. It is submitted that the decision whether or not to grant a mistrial was controlled by art. 771 since the jurisprudence states that a police officer is not a court official for purposes of art. 770. The decision was within the wide discretion of the trial court. There was no abuse of discretion by the court in failing to grant a mistrial. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
By this assignment of error, defendant contends that the evidence adduced at trial was insufficient to support her conviction. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the essential elements of the charged offense, distribution of cocaine,beyond a reasonable doubt. La.R.S. 40:967 A(1) provides:
A. Manufacture; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
The defendant argues that the undercover agent, who was not familiar with Sabine Parish, purchased the crack cocaine from a black woman in apartment E-8 of the Apollo Apartments and that defendant lived in apartment E-6 across the breezeway from E-8. The defendant argues that because the informant did not testify and because of defendant's testimony that she was out of town on the night in question, the evidence is insufficient to find that she was the vendor of the crack cocaine.
The state presented the testimony of Kevin Stafford, a Natchitoches Parish Sheriff's deputy, who accompanied the confidential informant who was wired, when the cocaine was purchased. He positively identified defendant as being the person from whom he had purchased cocaine. The purchase was made at 7:40 p.m. on December 8, 1989. Deputy Stafford received two rocks of crack cocaine from defendant for twenty-five dollars a piece. The cocaine was later turned over to Detective McComic.
Detective McComic and Deputy Cooley, a Natchitoches Parish Sheriff's deputy, both testified to observing the confidential informant and Deputy Stafford entering defendant's apartment and subsequently leaving. Robert Brumley and Teddy DeLacerda, deputies of the Sabine Parish Sheriff's Office, both testified as to the chain of evidence.
Defendant took the stand and denied selling drugs on December 8. She also testified that she left between 7:00 and 7:30 on *223 the night of December 8 with several other people on a trip to Houston. She stated that while in Houston, on December 9, her car was involved in an automobile accident; a friend of defendant's was driving her car at the time. The accident report was filed into evidence. A good friend of defendant's, Matrice McElroy, testified that she accompanied defendant to Houston, but that they did not leave until 9:30 or 10:00 on the night of December 8. However, defendant's sister, Emma Fox, who also went to Houston with defendant and others, testified that they left for Houston between 7:00 and 7:30 that night.
There was some confusion in the testimony as to the exact apartment number where the purchase of cocaine took place. Detective McComic initially testified that defendant's apartment number was E-80. He later remembered that the number was E-8 and that he must have accidentally typed E-80 on the report from which he had been reading before the trial began. Linda Williams, resident manager of the Apollo Apartments, testified that defendant lived in apartment number E-6.
It is submitted that after viewing the evidence in the light most favorable to the prosecution, the jury could have found defendant guilty of distribution of cocaine beyond a reasonable doubt. As the state alleges, the jury could have concluded that if defendant did in fact go to Houston, she left after the purchase of the cocaine took place. One witness even testified that they did not leave for Houston until 9:30 or 10:00 that night. Although there was confusion over the defendant's apartment number, Deputy Stafford testified that there was no doubt in his mind that defendant was the same person from whom he bought cocaine. Detective McComic testified that he had known defendant before May 8, knew her if he saw her, and knew where she lived. He further testified that he observed Deputy Stafford and the confidential informant enter the apartment where defendant resided. This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 3 AND 4
By these assignments of error, defendant alleges that the trial judge failed to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1 and that her sentence is excessive. In that these assignments are interrelated, they will be discussed together.
Article 1 § 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3d Cir.1988). To constitute an excessive sentence this court must find the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
The Legislature has provided criteria to aid a sentencing court in determining whether a sentence of imprisonment should be imposed and whether suspension of a sentence or probation is warranted. La. C.Cr.P. art. 894.1; State v. Klause, 525 So.2d 1076 (La.App. 3d Cir.1988). Paragraph (C) of Article 894.1 requires the court to state for the record the considerations taken into account and the factual basis used when imposing a sentence. The trial court need not refer to every aggravating and mitigating circumstance in order to comply with the article. However, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant's *224 sentence. State v. Smith, 433 So.2d 688 (La.1983).
A presentence investigation report (PSI) was ordered, which reveals that defendant is a thirty year old black divorced female with no children. Defendant has a prior adult record consisting of two convictions for theft, two convictions for issuing worthless checks, two convictions for unauthorized use of a movable, and numerous traffic offenses. Defendant was also arrested for aggravated battery, aggravated assault, and forgery, but these charges were dismissed by the state.
The sentencing range for distribution of cocaine is imprisonment at hard labor for not less than five years nor more than thirty years and a possible fine of not more than fifteen thousand dollars. La.R.S. 40:967 B. The trial judge sentenced defendant to eight (8) years at hard labor. In sentencing defendant, the trial judge stated that she had carefully reviewed the PSI and carefully considered the sentencing guidelines of art. 894.1 in determining an appropriate sentence. The judge took into consideration defendant's lengthy history of her contacts with the law and read aloud each arrest and conviction. The judge believed that a lesser sentence than eight years would deprecate the seriousness of the crime.
The judge also filed written reasons for the sentence into the record. These reasons reiterate what the judge said during sentencing, and also state that there were no mitigating factors, that the defendant acted under no provocation, and that there was no excuse for her behavior. The judge found it likely that defendant's criminal conduct would recur and that there was little chance that she would respond affirmatively to probationary treatment. Defendant was not recommended for the Impact Program because of her obesity and past history of violent behavior. Defendant argues that since she has not previously been convicted of a felony, there is no justification for the judge's refusal to consider probation for defendant.
It is submitted that the trial judge did adequately consider the codal guidelines in sentencing the defendant and fulfilled her duty under the law. Specifically, the judge carefully reviewed the PSI, taking into consideration defendant's numerous arrests and convictions. The judge believed defendant would not respond affirmatively to probationary treatment and a lesser sentence than eight years would deprecate the seriousness of the crime.
In light of the fact that the sentence imposed is in the lower range of possible sentences, we find that defendant's sentence is not apparently serious or grossly disproportionate in relation to the severity of the crime. A trial court is not required to render a suspended sentence or probation on a first felony offense, but may consider whatever factors and evidence which are deemed important to a determination of the best interest of the public and defendant. State v. Courtee, 545 So.2d 571 (La.App.2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989). Viewed against the background of the criteria expressed in art. 894.1, the circumstances of this particular offense, and the trial judge's explanation of the factual basis for her sentencing of the defendant, the sentence imposed is not excessive. There was no abuse of discretion by the trial court in imposing the sentence. These assignments of error lack merit.
DEFENDANT'S CONVICTION AND SENTENCE ARE AFFIRMED.
KNOLL, J., dissents and assigns reasons.
KNOLL, Judge, dissenting.
For the following reasons, I respectfully dissent.
I find the unsolicited reference by the State's witness, Detective McComic, on cross-examination by defense counsel of defendant's prior arrest for burglary so prejudicial as to warrant the granting of a mistrial. State v. Foss, 310 So.2d 573 (La. 1975). Therefore, I would reverse defendant's conviction and remand the case for a new trial.
NOTES
[*] Judge Warren E. Hood, Retired Judge of the Fourteenth Judicial District Court, Judge Pro Tempore.