637 So.2d 600 (1994)
STATE of Louisiana, Appellee,
v.
Herbert L. EDWARDS, Appellant.
No. 25963-KA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1994.
*601 John M. Lawrence, Kurt J. Goins, Richard E. Hiller, Asst. Indigent Defenders, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmoucne, Dist. Atty., James G. Burke, III, Tommy J. Johnson, Asst. District Attys., Shreveport, for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Herbert L. Edwards, was indicted for second degree murder in the shooting death of Willie James Robertson. A jury convicted him of manslaughter, a violation of LSA-R.S. 14:31. The trial court sentenced him to a term of imprisonment of seven years at hard labor. Pursuant to LSA-C.Cr.P. Art. 893.3, the trial court ordered that five of the seven years be served without benefit of parole, probation, or suspension of sentence. The defendant appealed. We affirm the defendant's conviction and sentence.

FACTS
On August 28, 1988, the defendant and his brother, Steve Collins, were involved in an altercation with the victim, Willie James Robertson, aka Sputnik. The defendant believed that the victim had stolen the tires and tire rims from Collins' car. Consequently, he went to his brother's house to pick up Collins. The defendant also obtained a .22 caliber rifle. The two brothers then drove a short distance to the 2000 block of Booker T. Washington; there they found the victim getting into his car and confronted him. The victim denied any knowledge of the theft. At this point, Collins went across the street to a house occupied by Margie Campbell and Joanna Carroll and asked Ms. Carroll to telephone the police.
While Collins was talking to Ms. Carroll, the defendant fired the rifle at the victim, who was seated in his car. The victim jumped out of the car and staggered behind a nearby house. As he fled, the defendant fired the rifle again. The victim was later found lying in the back yard and transported to the hospital where he died as a result of the gunshot wound.
Immediately after the shooting, the defendant went to his brother's house and gave the rifle to Collins' wife. He then returned to the scene of the shooting and was present when the police arrived in response to Ms. Carroll's phone call.
Through the statements of Ms. Carroll and Ms. Campbell, the police quickly developed the defendant as a suspect. (Ms. Carroll identified him as the gunman by the clothes he was wearing.) Both the defendant and his brother were taken into custody at the scene and transported to the police station for questioning.
Collins cooperated with the authorities and assisted them in recovering the weapon. Pursuant to Collins' suggestion, the police contacted his wife, and she surrendered the *602 rifle to the police. Subsequent testing by the crime lab verified that the rifle fired the fatal shot. The police also recovered two spent cartridges from the scene of the shooting.
The defendant made several differing statements to the police. At the crime scene, he initially told the police that two men involved in the shooting had already fled the area by automobile. After he was taken into custody but before he was transported to the police station, he told a police officer that the shots had been fired from the house in front of which the victim's car was parked. Later that evening at the police station, he told the detectives investigating the case that he had no knowledge as to who shot the victim. The next afternoon, he told the detectives that the shots must have been fired by either his brother or the person who lived at the house in front of which the victim's car was parked. When confronted with the statements of witnesses identifying him as the gunman, he admitted firing the rifle into the victim's car while the victim was inside. However, he insisted that he had not actually hit the victim.
The defendant was indicted on a charge of second degree murder, in violation of LSA-R.S. 14:30.1. After a jury trial, he was convicted of the offense of manslaughter.
Prior to the submission of the case to the jury, the defendant requested that the jury be charged that his "mere presence at or near a crime scene at or near the time of the crime" was not sufficient to render him guilty of the offense. The trial court denied the request, finding that such a charge was already included in the general charge that the state must prove its case beyond a reasonable doubt.
Following his conviction, the defendant filed a motion for new trial. In his motion, the defendant contended that: (1) the trial court erred in rejecting his requested special charge, and (2) the verdict was contrary to the law and evidence in that the state failed to prove that he was the person who fired the fatal shot. The trial court denied the motion.
The state requested that the defendant receive an enhanced sentence for the use of a firearm during the commission of a felony, under LSA-C.Cr.P. Art. 893.3. Therefore, the trial court imposed a sentence of imprisonment at hard labor for seven years, the first five years to be served without benefit of parole, probation, or suspension of sentence.
The defendant appealed, assigning as error the following: (1) the trial court erred by rejecting his requested special charge; and (2) the trial court erred in denying the new trial motion. The defendant also requested an error patent review.

JURY CHARGE
The defendant contends that the trial court erred in refusing to give the following special charge to the jury:
Mere presence at or near a crime scene at or near the time the crime was allegedly committed, without more, does not render one guilty of the offense committed. State v. Albert, 381 So.2d 424 (La.1980).
The trial court declined to give the charge on the basis that the general jury charge already instructed the jury that the state was required to carry the burden of proving that the defendant was guilty of the offense beyond a reasonable doubt.
LSA-C.Cr.P. Art. 807 provides, in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Like the trial court, we find that the gist of the requested charge was sufficiently included in the general charge concerning the state's burden of proof, as well as the portion establishing the presumption of the defendant's innocence. Thus, the jury was fully apprised that, in order to convict, more evidence than the defendant's mere presence at the scene of the crime was necessary. Furthermore, failure to read a special charge constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused or a violation of a constitutional or statutory right. *603 State v. Wright, 593 So.2d 759 (La.App. 5 Cir.1992), writ denied, 599 So.2d 313 (La. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 340, 121 L.Ed.2d 257 (1992). We find no such miscarriage of justice, prejudice or violation of rights in the present case.
This assignment of error is without merit.

MOTION FOR NEW TRIAL
The defendant also argues that the trial court erred in denying his motion for new trial. As previously noted, the motion was partially based on the trial court's rejection of the defendant's requested special charge. This issue was fully addressed in the preceding assignment of error, and we will not discuss it further.
The second basis for the motion for new trial asserted that the verdict was contrary to the law and evidence because the state failed to prove the identity of the defendant as the person who fired the fatal shot.
LSA-C.Cr.P. Art. 851(1) provides that the court shall grant the defendant a new trial on his motion when the verdict is contrary to the law and the evidence. Ordinarily, there is no appeal from the trial court's refusal to grant a motion for new trial except for error of law. State v. Seay, 521 So.2d 1206 (La.App. 2 Cir.1988).
On the motion for new trial, the trial court may assess only the weight of the evidence. The question of sufficiency of evidence should be raised by motion for post verdict judgment of acquittal. LSA-C.Cr.P. Art. 821; State v. Seay, supra. Since the subject of this assignment of error is really sufficiency of the evidence, and this is a constitutional issue, we will treat it as though it had been properly framed under LSA-C.Cr.P. Art. 821. State v. Seay, supra.
The standard for sufficiency of evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Harris, 625 So.2d 228 (La.App. 2 Cir.1993). That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Wilson, 623 So.2d 200 (La. App. 2 Cir.1993), writ denied, 629 So.2d 399 (La.1993).
An appellate court's authority to review questions of fact in a criminal case is limited to an evaluation of the sufficiency of the evidence under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. State v. McCray, 621 So.2d 94 (La.App. 2 Cir.1993); State v. Wilson, supra. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2 Cir.1986), writ denied, 499 So.2d 83 (La.1987); State v. Wilson, supra; State v. Harris, supra.
Although the defendant was indicted for the offense of second degree murder, the jury convicted him of the crime of manslaughter. LSA-R.S. 14:31. The defendant's argument as to the sufficiency of the evidence challenges the state's evidence identifying him as the person who actually fired the fatal shot.
The defendant contends that another person, probably his brother, killed the victim. In support of this assertion, at trial he presented the testimony of his lifelong friend and co-worker, Makeel Mayweather, and Makeel's sister, Bertha. Both testified that they were near the site of the shooting and they saw another man, definitely not the defendant, with the rifle. However, both of these witnesses also testified that they did not speak to the police for more than a year after the shooting because they did not want to "get involved." This was despite their statements that they had known the defendant all of their lives, saw him almost daily, and knew that he had been arrested for murder. Additionally, they claimed to be able to recall, in detail, the clothing of the men involved in the shooting five years after the incident without the benefit of any notes. They also maintained that, despite their frequent contact with the defendant and the *604 importance of the incident in the defendant's life, they had never discussed the shooting with him.
The state presented the testimony of Ms. Carroll, Ms. Campbell, and Mr. Collins, all of whom were present at the time of the shooting. Both women testified that the defendant was the gunman and that they never saw Mr. Collins with the rifle. Mr. Collins testified that he did not see the actual shooting, but he turned around when he heard a gunshot. At that point, he saw the defendant holding the rifle; he also observed the victim getting out of his car and telling the defendant, "... you shot me."
The parish coroner testified that the victim died as the result of extensive hemorrhaging caused by a .22 caliber bullet. The evidence presented at trial further established that immediately after the shooting the defendant gave a rifle to his sister-in-law for safekeeping. A firearms expert from the crime lab testified that the bullet recovered from the victim's body was fired from that rifle, as were two fired cartridge cases recovered at the scene of the shooting.
Viewing the evidence in the light most favorable to the prosecution, we find that the jury could have concluded that the defendant was the person who shot and killed the victim. Although the defendant presented two witnesses who testified that someone other than the defendant was in possession of the rifle and fired it, the jury chose to believe the witnesses put forth by the state. Such a credibility determination was well within the province of the jury and will not be disturbed on appeal. In support of the jury's resolution of the credibility issue, we note that the jury could have easily found that the testimony of the Mayweather siblings suspect and discarded it.
Based on the foregoing, we find that there was ample evidence to support the defendant's conviction for manslaughter. This assignment of error is without merit.

ERROR PATENT
We have carefully examined the record for error patent and found none.

CONCLUSION
Based on the foregoing, the defendant's conviction and sentence are affirmed.
AFFIRMED.