669 So.2d 719 (1996)
STATE of Louisiana, Appellee,
v.
James Ray EVANS, Appellant.
No. 27750-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
*720 Richard C. Goorley, Shreveport, for Appellant.
*721 Richard Ieyoub, Baton Rouge, Paul Carmouche, H.T. Cox, Shreveport, for Appellee.
Before NORRIS, STEWART, JJ., and CLARK, J. Pro Tem.
CLARK, Judge Pro Tem.
James Ray Evans was charged by indictment with the aggravated rape of twelve-year-old V.H., a violation of LSA-R.S. 14:42. Following a jury trial, Evans was convicted as charged by a 10-2 vote. The trial court imposed the statutorily mandated sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Evans appeals and argues four assignments of error.[1] We affirm his conviction and sentence.

FACTS
On September 10, 1991, at approximately 9:00 p.m., V.H. and her seventeen-year-old sister, A.L., were walking on Linear Street in Shreveport when they met up with Evans and two other men, Birdette Barker and Robert Bradford. A.L., a crack cocaine addict, approached the three men and talked with them out of V.H.'s earshot. According to A.L.'s testimony, she and Barker agreed that V.H. would perform oral sex on Barker in exchange for a rock of crack cocaine. Barker gave A.L. the crack and she immediately smoked it. V.H. was unaware of the agreement between A.L. and the men.
V.H., A.L., and the three men then walked to Barker's house on Nina Street. When the group entered the house, A.L. went into one of the bedrooms with Evans and Bradford. V.H. remained in the living room with Barker. He asked her if she was a virgin and whether she had ever sucked a penis. V.H. replied no to both questions. Barker then grabbed a hammer and threatened to strike her if she did not suck his penis. V.H. complied with his demand and performed fellatio on him.
Barker then knocked on the bedroom door, and A.L., Evans and Bradford came out of the room. Barker, still armed with the hammer, ordered V.H. to enter the bedroom, remove her clothes, and get on the bed. Once she complied, Barker had sexual intercourse with her.
Afterwards, V.H. dressed, returned to the living room, and informed A.L. that she wanted to leave. The three men would not let them leave, and Barker ordered V.H. back into the bedroom. Evans and Bradford followed her into room and closed the door. V.H. wrestled with the men as they attempted to throw her on the bed. During the struggle, Bradford held V.H. down while Evans attempted to pull her pants down. Because V.H. continued to scream and make noise, Evans and Bradford held a pillow over her head.
At some point during V.H.'s struggle with Evans and Bradford, A.L. pleaded with Barker to make them stop and offered to "take care" of the men instead. However, all three men replied that they wanted "fresh meat."
While Evans and Bradford where talking with A.L., V.H. crawled to the bedroom door and again attempted to leave, but was unsuccessful. Barker retrieved a crack pipe and ordered V.H. to smoke a rock of cocaine. Once again, she complied with his demand. After V.H. finished smoking the crack, Barker gave the hammer to Bradford, who, with Evans, took V.H. back into the bedroom. V.H. was then forced to perform oral sex on Bradford and Evans.
After Evans left the room and closed the door, Bradford attempted anal intercourse and performed vaginal intercourse with V.H. over a period of several hours. At one point, Bradford allowed V.H. to leave the bedroom to use the bathroom. V.H. looked for a window to escape but found none. Bradford then ordered her back into the bedroom and continued to engage in intercourse with her.
Around 3:00 a.m., Evans, Barker, and A.L. left the house to get something to eat. A.L. managed to escape, run to a friend's house, and call the police. The police came, picked *722 up A.L. and the friend, and drove to Barker's house.
In the meantime, Evans and Barker warned Bradford that A.L. had escaped. They ordered V.H. to dress, and Evans and Bradford agreed to take her home. The police arrived as they were walking down the driveway. Upon seeing the police, Evans ran but was shortly apprehended. Barker and Bradford were also taken into custody.
Corporal Moore of the Shreveport Police Department advised Evans of his Miranda rights. Evans at first claimed to know nothing about the evening's events, but later recanted this story. He then stated he had consensual intercourse with one of the girls, but did not identify which one.
Following Evans' arrest he gave a statement to Detective Jackson and Lieutenant Lowe. He admitted having oral sex and sexual intercourse with A.L., but denied having any type of sex with V.H. At trial, Evans testified that Barker asked A.L. and V.H. if they wanted to "do something," i.e. have sex, in exchange for crack cocaine. Evans again admitted to having consensual intercourse with A.L., but denied having any physical contact with V.H. He also testified that V.H. informed the group that she was seventeen and at no time complained of any of the evening's activities.
Following the police taking all three men into custody at Barker's house, A.L. and V.H. were placed in a police car together. A.L. instructed V.H. to agree with whatever story she gave authorities. A.L. then informed the police that she and V.H. were out looking for their uncle when they met up with the three men. They told the police that the men informed them that their uncle was at Barker's house and proved it by showing them their uncle's cap. At trial both admitted to fabricating the story in an effort to protect A.L. because of her role in the evening's events. However, both girls insisted that their testimonies at trial were the truth.[2]

DISCUSSION

Sufficiency of the Evidence
Following his conviction, Evans filed both a motion for new trial and for a post-judgment verdict of acquittal based in part upon his claim that the evidence at trial was not sufficient for the jury to have convicted him of aggravated rape. LSA-C.Cr.P. Art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e. that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir. 06/22/94), 639 So.2d 391, writ denied, 94-1981 (La. 12/16/94), 648 So.2d 387 (citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)).
Evans' argument centers around the question of sufficiency of evidence, an issue he properly raised in the trial court by his motion for post-verdict judgment of acquittal. LSA-C.Cr.P. Art. 821(B) provides that "[a] post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in the light most favorable to the state, does not reasonably permit a finding of guilty." See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Edwards, 25,963 (La.App.2d Cir. 05/04/94), 637 So.2d 600.
An appellate court's authority to review questions of fact in a criminal case is *723 limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Edwards, supra; State v. McCray, 621 So.2d 94 (La. App.2d Cir.1993). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Edwards, supra; State v. Wilson, 623 So.2d 200 (La.App.2d Cir.), writ denied, 629 So.2d 399 (La.1993).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, et al, 628 So.2d 27 (La.App.2d Cir.1993), writ denied, 94-0018 (La. 03/25/94), 635 So.2d 236.
Rape is defined by LSA-R.S. 14:41:
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
LSA-R.S. 14:42 sets forth the crime of aggravated rape:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), "participate" shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
V.H.'s testimony that she was raped was supported by the testimony of Dr. Todd Fonetnot, who examined her the morning following the incident. During his examination, Dr. Fonetnot noted redness throughout V.H.'s vagina and on the outside of her vagina. He testified that this finding was indicative of irritation and trauma to the vagina not likely to occur with normal sexual intercourse. Dr. Fonetnot also found secretions in the vagina containing motile sperm which indicated intercourse within the last eight hours. V.H. testified that she wrestled with Evans and Bradford and screamed for help. Her resistance was overcome by the threat of great and immediate bodily harm.
From V.H.'s testimony and the medical evidence, the jury could reasonably conclude V.H. resisted to the utmost but was overcome by force and the threat of great and immediate bodily harm.
More difficult, however, is defining Evans' role in the aggravated rape. Evans contends that the evidence showed that he did not have vaginal sexual intercourse with V.H. V.H. testified that she was forced to have oral sex with Evans and not vaginal or anal intercourse. Other evidence supported this testimony. Rebecca Collins, a forensic scientist with the North Louisiana Crime Lab, analyzed the contents of the sexual assault examination kit collected from V.H. She compared the seminal fluid found in V.H.'s vaginal washings with blood samples from Evans, Barker, and Bradford and concluded that Barker and Bradford could have deposited the sperm, but not Evans.
However, the state does not argue that Evans had vaginal or anal sexual intercourse with V.H., but instead submits that Evans was tried and convicted as a principal to aggravated rape.
LSA-R.S. 14:24 defines principals:

*724 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Despite the fact that Evans did not have vaginal or anal intercourse with V.H., the jury could have reasonably inferred that the intent of all three men was to have sexual intercourse with V.H. and that Evans' aided and abetted the commission of the rape by Bradford and Barker. Evans aided Bradford in forcing V.H. into the bedroom. He wrestled with her and attempted to remove her pants. After Bradford obtained the hammer, Evans joined him in the bedroom with V.H. where they each forced her to perform oral sex. At one point, Evans and Bradford placed a pillow over V.H.'s head to suppress her screams for help. Furthermore, Evans participated in preventing V.H. and A.L. from leaving the house for approximately seven hours.
Thus, viewing the evidence in the light most favorable to the prosecution, the jury could have found that Evans was a principal to the aggravated rape of the V.H.

Grand Jury Testimony
Evans' next two assignments of error concern the grand jury testimony of V.H. and A.L. Evans argues that the trial court erred in denying his request that the court review the testimony to ascertain whether they were consistent with their trial testimony and refusing to allow defense counsel to cross-examine A.L. about her grand jury testimony.
LSA-C.Cr.P. Art. 434 A provides:
Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the attorney general or the district attorney, or with the court.
This court addressed the disclosure of grand jury testimony under LSA-C.Cr.P. Art. 434 and relevant cases in its decision of co-defendant Barker's appeal. In State v. Barker, 628 So.2d 168 (La.App.2d Cir.1993), writ denied, 93-3194 (La. 03/25/94), 635 So.2d 236, this court stated:
The Supreme Court has consistently held that a defendant is not entitled to production of a transcript of the secret grand jury proceedings against him. State v. Peters, 406 So.2d 189 (La.1981), State v. Williams, 310 So.2d 528 (La.1975). The transcript may not be used at trial even to conduct cross examination. The purpose of this rule is not to protect a defendant or witness at a subsequent trial, but to encourage the full disclosure of information about the crime. State v. Sheppard, 350 So.2d 615 (La.1977).
The rule of secrecy, however, is not absolute. Grand jury testimony may be disclosed pursuant to one of the codal exceptions (statutory irregularities, perjury before the grand jury). C.Cr.P. art. 434A. Also, when the defendant requests it, the state must produce evidence that is favorable to the accused, if that evidence is material to guilt or innocence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Brady rule also applies to evidence which impeaches the testimony of a witness when the credibility of that witness may be determinative or guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Davenport, 399 So.2d 201 (La.1981). In short, the secrecy of grand jury proceedings cannot be used to thwart a defendant's constitutional rights. State v. Peters, supra. To strike a balance between *725 the accused's right to confront his accusers and the state's interest in maintaining secrecy, the Supreme Court has authorized an in camera inspection of grand jury transcripts to determine whether they may be used for impeachment purposes. Id., 406 So.2d at 191. Ultimately, disclosure is within the trial court's sound discretion. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dism. 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Evans, 512 So.2d 615 (La.App.2d Cir.1987), writ denied 516 So.2d 367 (La. 1988).
State v. Barker, 628 So.2d at 173.
When a party seeks the disclosure of grand jury testimony, he bears the burden of showing a particularized need for violating the secrecy of the grand jury proceedings. State v. Trosclair, supra; State v. Farris, 491 So.2d 464 (La.App. 3d Cir.1986). A general claim that disclosure of grand jury testimony would reveal evidence of perjury is insufficient to satisfy the requirement of a showing of particularized need. State v. Trosclair, supra.
The first incident occurred during defense counsel's cross-examination of V.H. Counsel requested that the trial judge review the grand jury testimony of the two girls to ascertain whether there were any discrepancies with the testimony at trial, arguing such discrepancies would be Brady material. The trial judge denied defense counsel's request because counsel had failed to file a pre-trial motion making such a request although he had been aware of V.H.'s prior inconsistent statements for some time; because the court had made a prior in-camera inspection of the grand jury transcript and found no Brady material; and because counsel had failed to show any prejudice in the court's refusal to review the grand jury transcript a second time.
Evans argues that the trial court erred in not conducting a second in-camera inspection of the grand jury testimony of V.H. and A.L. for Brady material in the form of inconsistent statements. Evans appears to argue that the girls committed perjury in their testimony to the grand jury. As evidence of this alleged perjury, Evans points to the fact that he was indicted for aggravated rape and not as a principal to aggravated rape and thus infers that the girls testified at the grand jury that he had sexual intercourse with V.H.
Although alleged perjury is an exception for disclosure of grand jury testimony, State v. Barker, supra, Evans failed to allege facts sufficient to support a particularized need for the disclosure of grand jury testimony. There is no requirement that a person charged with an offense who did not directly commit the act constituting the offense be specifically denominated a "principal." State v. Peterson, 290 So.2d 307 (La. 1974); State v. Muntz, 534 So.2d 1317 (La. App. 4th Cir.1988). Thus, Evans' argument that the fact he was charged for the offense instead of as a principal is evidence of perjury by V.H. and A.L. is without merit.
Furthermore, defense counsel admitted he was aware that both girls had made false statements to the authorities and to their treating physician. At trial, he used these statements to effectively cross-examine V.H. and A.L. and both admitted that they had made false statements. Thus, the defense counsel failed to show any prejudice by the court's refusal to inspect the grand jury testimony for inconsistent statements.
Finally, the court had previously inspected the grand jury transcript and discovered no Brady material. Considering all these factors, we find that the trial court judge did not abuse his sound discretion in refusing to conduct a second in camera inspection.
The second incident occurred during the testimony of A.L. She admitted to making false statements to the police and to Dr. Fonetnot about the events of the evening in question. A.L. stated that she did not tell the truth until she met with her attorney. When defense counsel attempted to question her about her grand jury testimony, the state objected. Defense counsel stated that A.L.'s attorney was appointed after the grand jury heard testimony. He argued that if A.L. did not tell the truth until she met with her attorney, then one could conclude that she had committed perjury in her grand jury testimony. Thus, counsel contended he *726 should be allowed to ask A.L. if she had made false statements to the grand jury. The trial court judge sustained the state's objection to the question.
Evans contends that the trial court erred in prohibiting him from questioning A.L. about her testimony before the grand jury, specifically whether she had made false statements. Thus, he submits that the trial judge unduly restricted his right to an effective cross-examination.
A conviction will not be overturned due to the court's limitation of the cross-examination of a witness unless the defendant shows that he suffered prejudice. State v. Washington, 597 So.2d 1084 (La.App.2d Cir.1992); see also LSA-C.Cr.P. Art. 921. Evans has failed to allege any prejudice due to the trial court's limitation of his cross-examination of A.L. Evans was aware that the girls had originally made false statements to the treating physician and to the investigating officers. He effectively used these false statements to attack A.L.'s credibility during cross-examination. A.L. admitted to lying to the officers out of fear she would be in trouble. Thus, Evans was not deprived of the use of prior inconsistent statements during cross-examination. Accordingly, any error the trial court may have committed in restricting the cross-examination of A.L. was harmless under the circumstances. Washington, supra.

Rebuttal testimony
In his last assignment of error, Evans argues that the trial court erred in allowing the state to recall him to establish a foundation for impeachment.
Evans testified in his own defense. After the defense rested, the state attempted to recall Detective Jackson to impeach Evans with prior inconsistent statements. The trial court sustained Evans' objection to the lack of foundation. The state then recalled Evans over the defense's objection.
Once a criminal defendant has waived his constitutional right to not testify and voluntarily takes the stand, he may be recalled to testify just as any other witness. State v. Brown, 111 La. 696, 35 So. 818 (La.1904); State v. Favre, 51 La.Ann. 434, 25 So. 93 (La.1898). Further, the defendant may be recalled to lay the foundation for his own impeachment. State v. Brown, supra.
In addition, Evans has failed to establish any prejudice by his recall. On rebuttal, Evans' testimony centered around the statement he gave to Detective Jackson following his arrest. Evans acknowledged he originally denied smoking crack cocaine on the night in question. However, during cross-examination he admitted to smoking crack on the night in question. Thus, the questioning as to the prior statement was of little prejudice to him.
We do not find that the trial court abused its discretion when it allowed the state to recall Evans to establish a foundation for impeachment. This assignment of error is without merit.

Error Patent
We reviewed the record for errors patent and found none.

CONCLUSION
For the foregoing reasons, we affirm Evans' conviction of aggravated rape.
AFFIRM.
NOTES
[1] Assignment number five, alleging that the trial court erred in denying Evans' motion for new trial based upon alleged jury misconduct, was not briefed. Assignments neither argued nor briefed are considered abandoned. URCA Rule 2-12.4.
[2] Barker was subsequently tried and convicted as charged of two counts of aggravated rape and received consecutive sentences of life at hard labor without benefit of parole, probation, or suspension of sentence. This court affirmed his convictions and sentences in State v. Barker, 628 So.2d 168 (La.App.2d Cir.1993), writ denied, 93-3194 (La. 03/25/94), 635 So.2d 236.

Bradford was charged with two counts of aggravated rape. Pursuant to a plea agreement, he pled guilty to reduced charges of forcible rape. He was sentenced to concurrent sentences of twenty-six years. This court affirmed his convictions and sentences in State v. Bradford, 627 So.2d 781 (La.App.2d Cir.1993), writ denied, 94-0006 (La. 04/22/94), 637 So.2d 154.