437 So.2d 849 (1983)
STATE of Louisiana
v.
Nick C. NICHOLSON.
No. 82-KA-1618.
Supreme Court of Louisiana.
September 2, 1983.
Rehearing Denied October 7, 1983.
*850 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., Carey Schimpf, Tommy Johnson, Asst. Dist. Attys., for plaintiff-appellee.
Richard Goorley, Jeanette Garrett, Shreveport, Asst. Indigent Defender, for defendant-appellant.
WATSON, Justice.
Defendant, Nick C. Nicholson, was convicted by a jury of the first degree murder of Kelly Ann Gramm, also known as Kelly Ann Weaver, on or about August 10, 1981. LSA-R.S. 14:30. Since the jury could not agree on a sentence, the court imposed life imprisonment without benefit of probation, parole or suspension of sentence. LSA-C. Cr.P. art. 905.8. Defendant has appealed his conviction and sentence, arguing five assignments of error.

FACTS
At the intersection of Jewella Street and Mansfield Road, Shreveport, Louisiana, there is a Citgo Quik Mart where the twenty year old victim was working a shift from 10:00 P.M. until 6:00 A.M. Police Sergeant Lewis L. Jackson, a regular customer, saw *851 Kelly Ann in the store at approximately 1:40 A.M. A security guard, Don Dreher, was with her, but Dreher left a little later. Shortly afterward, Jackson received an alarm from the Shreveport Police Department concerning the Citgo station. A silent holdup alarm had been activated at 1:52 A.M. When Jackson reached the Citgo parking lot, he observed another police unit stopping a red vehicle in the next block.
Officer Gary L. Whitis had been only two blocks from the Citgo Quik Mart when he heard the alarm on his walkie-talkie. Whitis arrived on the scene in less than two minutes and observed a red car pulling away from the station. Defendant Nicholson was in the car with blood on his clothes and a cash register beside him on the front seat. Nicholson was given his rights and placed under arrest for armed robbery by Officer Whitis. A folded "buck knife" was taken from his back pocket. (Tr. 454).
Meanwhile, Officer Jackson had gone into the Citgo station and found Kelly Ann behind the counter lying on her back covered with blood. There was no pulse. There was a pool of blood near the body and scattered drops on the floor and ceiling. The cash register was missing. Concerned that the occupant of the red car might be armed, Jackson broadcast a warning that the victim appeared to have been shot.[1] Officer Jackson then secured the scene and made photographs.
Officer Allen E. Hall reached the area a little later, and again advised defendant of his rights. Officer Whitis heard him commence and then left to examine the scene of the crime. Nicholson told Hall he understood his rights. Hall asked Nicholson about the gun. Nicholson replied that he had "used a knife". (Tr. 372) Nicholson had stabbed the girl because: "[s]he would not give me the cash register." (Tr. 372) In response to another inquiry from Hall, Nicholson said he had been alone during the robbery. When Nicholson later tried to escape from the back seat of the police car, he was "maced" by Whitis. (Tr. 380) Several other police officers arrived and Nicholson was transferred to a car with a security cage.
Nicholson, testifying in his own behalf, admitted he had been told his rights twice, once by each of the two officers. Although the second warning was alleged to be after he had been maced, he "completely" (Tr. 383) or "pretty much understood" (Tr. 384) his rights. Nicholson claimed he was not told he did not have to make any statements.[2] He admitted being questioned about "the gun", but denied being asked or having answered any other questions. (Tr. 383)
According to Nicholson, he was scheduled to report for work at 2:00 A.M. that morning. Enroute, he saw a familiar car, stopped to render aid and encountered a casual acquaintance, one Richard (last name unknown). Richard appeared to be "high" on something; he was larger than Nick. (Tr. 716) Richard allegedly borrowed Nick's knife and then announced his intention of scaring the Quik Stop lady with it. Since Richard knew where Nick lived and threatened him with death, Nick went along in his separate car. After Richard emerged from the Quik Stop, he made Nick go in and get the cash register. Nick saw his knife in the lady's stomach, pulled it out, grabbed the cash register, and drove away to meet Richard.
The coroner determined that Kelly Ann had sustained a minimum of thirty-nine stabbing wounds. Fibers from Nicholson's clothing were found on her clothes. Droplets of blood on her chest and on the floor were consistent with Nicholson's blood *852 tests. Nicholson's knife was the murder weapon; its broken tip was embedded in the victim's skull. Nicholson's fingerprints were on the knife and also on the cash register tray.
Nicholson left drops of blood on the police station floor. At the L.S.U. Medical Center, Nicholson received four stitches for cuts on his left index finger and arm.
Citgo employees started cleaning up the premises about 2:15 A.M., and the Quik Mart was reopened for business at 4:00 A.M.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that he was denied a fair trial because a rhetorical question by the prosecutor during rebuttal argument falsely implied that he had not told his Richard story to the police.
"Why didn't he tell the story to the police?" (Tr. 923) was the question.
On the morning of the murder, after he was transported to the Shreveport jail, Nicholson gave an oral statement which was essentially the same as his trial testimony to the effect that Richard killed Kelly Ann. This same story was repeated in a recorded statement on October 10, 1981. Neither statement was introduced in evidence. Counsel's closing argument for the defense, indicated that Nick had told the police about Richard.[3] The trial court held that the prosecutor's argument was appropriate rebuttal. LSA-C.Cr.P. art. 774.[4] Consequently, there was no request for an admonition or a mistrial. LSA-C.Cr.P. art. 771.[5]
Defendant argues that the Fifth Amendment protects him from the false implication that he remained silent, relying on Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Defendant also contends that the prosecutor's false and prejudicial reference deprived him of a fair trial.
Doyle's prohibition against use of silence for impeachment purposes does not apply to a defendant who has not been induced to remain silent. Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).[6] See State v. Kersey, 406 So.2d 555 (La.1981). Thus, there is no Fifth Amendment question presented.
The issue is whether the prosecutor's implication was so prejudicial that it deprived Nicholson of a fair trial.
The prosecutor may have attempted to give the jury the false impression that defendant's trial testimony was not what defendant *853 had told the police.[7] As such, the rhetorical question would have been prejudicial. However, the evidence against Nicholson was truly overwhelming. If the prosecutor had curbed his tongue, there is no question that the jury would have nonetheless returned a verdict of guilty. Therefore, the error was harmless. United States v. Hastings, ___ U.S. ___, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); LSA-C.Cr.P. art. 921;[8]State v. Bretz, 394 So.2d 245 (La.1981); State v. Webb, 419 So.2d 436 (La.1982). Compare Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that the trial court erred in denying his motion to seal off the crime scene for defense inspection.
On the evening of defendant's arrest, his counsel asked the trial court to order the crime scene sealed for defense examination. The oral request was made at approximately 6:25 P.M. and a written motion to the same effect was filed the next day, August 11. The trial court concluded that there was no authority for such an order and denied the oral and written motions.
The Quik Stop was open for business and available for examination at approximately 4:00 A.M. on the morning of the murder. Although the premises had been cleaned, they were open to the public and a court order was unnecessary for their examination by the defense. Ordering the Quik Stop sealed for defense inspection that evening would have been pointless. The trial court did not err in refusing to grant the motions.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that the trial court erroneously excused a prospective juror, Pauline Martwick, for cause.
Pauline Martwick had had a traumatic encounter with the law in connection with an undetailed situation which threatened her son's life. In her opinion, the assistant district attorney who handled the matter did not do justice and the incident left scars. She did not think she could decide the case independently of her lack of respect for the law, and she might decide contrary to what the law would dictate. She could not be impartial. The episode in question occurred seven years before the jury selection, when another district attorney held office. Pauline Martwick faints at the sight of blood.
The trial court noted that Ms. Martwick's answers to rehabilitating questions were qualified by "her body English". (Tr. 230) Because of doubt about her impartiality and her hypersensitive reaction to blood, the challenge for cause was sustained.
The prospective juror indicated she would not accept the law given to her by the court. LSA-C.Cr.P. art. 797(4).[9] The trial court correctly weighed her "total performance" during the examination. State v. Albert, 414 So.2d 680 at 682 (La.1982). There was no abuse of discretion in excusing this juror for cause.
This assignment lacks merit.

*854 ASSIGNMENT OF ERROR NUMBER SIX
Defendant contends that the trial court erroneously excused a prospective juror, Faye Robinson, for cause.
Faye Robinson testified that she could not vote for a death penalty, stating: "I couldn't say that anyone has to go to death. I don't want to be a part of it." (Tr. 218) Although she would "never vote for it", she "probably" could in the case of someone like Adolph Hitler. (Tr. 219) If Charles Manson or Hitler were being tried, she thought she could consider a death penalty.
The trial court concluded that Ms. Robinson could not impose a death penalty and allowed the challenge for cause.
Ms. Robinson indicated that she would vote automatically against capital punishment except in the case of a mass murder on the scale of Adolph Hitler or Charles Manson. There was no abuse of discretion in the trial judge's conclusion that this disqualified her as a juror. See LSA-C.Cr.P. art. 798(2).[10] In any event, defendant has no ground for complaint because the state failed to exercise one of its peremptory challenges. LSA-C.Cr.P. art. 800; State v. Hillard, 398 So.2d 1057 (La.1981).[11]
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendant contends that the trial court erred in allowing into evidence the three inculpatory oral statements made to Officer Hall. Defendant argues that the state failed to carry its burden of showing a knowing and intelligent waiver of his Miranda rights.[12]
According to Officer Hall, Nicholson said he understood his rights. In court, Nicholson virtually admitted that he understood his rights, but denied saying anything other than that he did not have a gun. However, the evidence supports the finding that Nicholson made a knowing and voluntary waiver of his privilege against self-incrimination. State v. Brown, 384 So.2d 425 (La.1980).
This assignment lacks merit.
For the foregoing reasons, the conviction and sentence of defendant, Nick Nicholson, are affirmed.
AFFIRMED.
CALOGERO, J., concurs.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Perhaps the only way to curb outright prosecutorial misconduct is to reverse convictions in which such tactics are deliberately used.[1] With this reservation, and agreeing with the majority's observation that the evidence overwhelmingly established guilt, I concur in the conclusion that, despite the deliberately deceptive argument designed to further undermine defendant's already utterly implausible version, there is no reasonable likelihood that the argument influenced *855 the jury's verdict. See State v. Dupre, 408 So.2d 1229 (La.1982).
NOTES
[1] Officer Whitis asked Nicholson about a gun and understood the reply to be "in the car". (Tr. 343) A gun was never located and there is no evidence that one was used in the murder.
[2] Both officers said he was advised of his right to silence:

"You have the right to remain silent. Anything you say can or will be used against you in a court of law..." (Officer Whitis, Tr. 341)
"I advised him he had the right to remain silent, that anything he said would be and could be used against him in a court of law,..." (Officer Hall, Tr. 395)
[3] "Officer Hall knew later on what Nick had told the police had happened about Richard, and Officer Hall decided to come back and get all of that out of the way." (Tr. 905)
[4] LSA-C.Cr.P. art. 774 provides:

"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
[5] LSA-C.Cr.P. art. 771 provides:

"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
[6] In Anderson a defendant was cross-examined about why he did not tell the police the story he recounted at trial. Anderson held that there was no unconstitutional inquiry into post arrest silence because the questions were intended to elicit an explanation for a prior inconsistent statement.
[7] On the other hand, the prosecutor may have been asking why defendant did not tell the "Richard" scenario to the police when he was first apprehended.
[8] LSA-C.Cr.P. art. 921 provides:

"A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."
[9] LSA-C.Cr.P. art. 797(4) provides:

"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
"(4) The juror will not accept the law as given to him by the court; or...."
[10] LSA-C.Cr.P. art. 798(2) provides:

"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
* * * * * *
"(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; or...."
[11] Defendant relies on Moore v. Estelle, 670 F.2d 56 (5 Cir.1982), but that case involved a capital verdict.
[12] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[1] The prosecutor knew that defendant made a statement at the police station blaming Richard for the murder. Nevertheless, he suggested to the jury that defendant's trial testimony (relating the same version) should be rejected because no such statement had been made to the police after arrest. The only apparent explanation for this argument was to deliberately mislead the jury with a suggestion based on a premise known to be false.