746 So.2d 725 (1999)
STATE of Louisiana
v.
Shawn GASPARD.
No. CR99-481.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
*726 Michael Harson, Lafayette, Keith A. Stutes, Asst. Dist. Atty., for State.
Lee Andrew Gallaspy, Alfred Frem Boustany, II, Lafayette, for Shawn Gaspard.
Before DOUCET, C.J., PETERS, and SULLIVAN, Judges.
*727 SULLIVAN, Judge.
Shawn Gaspard appeals his conviction for first degree murder and his sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. For the following reasons, we affirm the conviction and sentence.

Background
Gerald Green was murdered on October 2, 1992, at the Green Oaks Lounge on Guilbeau Road in Lafayette. Defendant and Mitchell Hebert were charged with the first degree murder of Green. The facts of the murder and its investigation are detailed in a prior opinion by this court in State v. Gaspard, 95-1643 (La.App. 3 Cir. 5/8/96); 685 So.2d 151.
Hebert confessed to the murder shortly after 7:00 p.m. that same day. Later that evening, at approximately 9:30 p.m., Defendant confessed. Prior to trial, Defendant sought to have his confession suppressed. The motion to suppress was denied. Id.
Ultimately, Defendant was tried by a jury and found guilty of first degree murder. He was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. On appeal, he raises three assignments of error. The first assigned error concerns the denial of the motion to suppress. The remaining issues involve the alleged insufficiency of the evidence and the alleged discrimination in the selection of the grand jury foreperson.

Errors Patent
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. Our review of the record reveals one error patent.
The trial court informed Defendant that he had three years from the date of sentencing to file an application for post-conviction relief. Under La.Code Crim.P. art. 930.8, Defendant has three years after the judgment of conviction and sentence have become final to apply for post-conviction relief. Therefore, the trial court is hereby ordered to inform Defendant of the correct provisions of Article 930.8 by sending written notice to him within ten days of the rendition of this opinion and to file written proof of his receipt of said notice into the record of these proceedings. See State v. Dozier, 97-1564 (La.App. 3 Cir. 5/20/98); 713 So.2d 729, writ denied, 98-1694 (La.11/25/98); 729 So.2d 573.

Sufficiency of the Evidence
Defendant contends that the jury erred in finding sufficient evidence to support a conviction for first degree murder under Louisiana's felony murder theory. We consider this assignment first since a ruling in Defendant's favor on this issue will result in his acquittal. State v. Hearold, 603 So.2d 731 (La.1992). Under Hearold, the entirety of the trial evidence, both admissible and inadmissable, must be reviewed. Therefore, Defendant's arguments regarding the inadmissibility of his confession have no bearing on our review of this issue. If the evidence is sufficient to support a conviction, Defendant is not entitled to an acquittal, and we must consider his assignments of error to determine whether he is entitled to a new trial. Id.
As explained by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), when sufficiency of the evidence is at issue on appeal, an appellate court must view the evidence in a light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. "The rational factfinder standard of Jackson v. Virginia ... allows an appellate court to impinge on `the actual factfinder's discretion ... only to the extent necessary to guarantee the fundamental protection of due process of law.'" State v. Juluke, 98-341, p. 4 (La.1/8/99); 725 So.2d 1291, 1293 (citation omitted). Furthermore, the Louisiana Supreme Court *728 explained that, since the Jackson standard has a limited purpose, it does not permit a reviewing court to second guess the rational credibility determinations of the fact finder. Id., citing State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
In order to obtain a conviction, the State must prove the elements of the crime charged beyond a reasonable doubt. Defendant was charged with first degree murder, which includes "the killing of a human being [w]hen the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery ... or simple robbery." La.R.S. 14:30.
Simple robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." La.R.S. 14:65(A). Armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). All persons concerned in the commission of a crime are equally culpable, according to their mental state at the time the crime was committed. La.R.S. 14:24. State v. Anderson, 97-1301 (La. 2/6/98); 707 So.2d 1223.
Dr. Emil Laga, a forensic pathologist, testified that Green's death was caused by a severe laceration to his throat. He further testified that an injury to Green's right forehead was potentially fatal. The forehead injury was compatible to an injury resulting from being hit with a bottle.
In his confession, Defendant explained that he and Hebert planned to enter the Green Oaks Lounge to rob and kill Green. From the inception of their robbery plot, they planned to kill Green because he knew them and could easily identify them. Defendant confessed to locking the door after he and Hebert entered the lounge. Defendant denied cutting Green but confessed to kicking and hitting him in the head with a bottle. He admitted to taking money from the lounge. Thus, Defendant's confession proved that he had the specific intent to kill Green during the robbery and that he was a direct participant in both the robbery and the killing. Further, the hiking boots worn by Defendant at the time of the robbery/murder were recovered from a dumpster at Acadiana Mall pursuant to instructions given in his confession.
Defendant argues that under the "corpus delicti rule," an accused cannot be convicted on his own uncorroborated statement. He is correct. The corpus delicti rule was reviewed by the Louisiana Supreme Court in State v. Martin, 93-285, p. 7 (La.10/17/94); 645 So.2d 190, 195 (citations omitted):
Under the Louisiana corpus delicti rule, an accused cannot be convicted on his own uncorroborated confession without proof that a crime has been committed by someone. The prosecution, in order to establish guilt, must show that the injury specified in the crime occurred and that the injury was caused by someone's criminal activity. The touchstone is trustworthiness-an untrustworthy confession should not alone support a conviction, and corroboration is an effective test of the trustworthiness of a person's inculpatory statements.
. . . .
... Corroborating evidence need only show the essential injury involved in the charged crime (e.g., death caused by criminal activity in a murder charge) in order to establish the reliability of the inculpatory statements of the accused; the corroborating evidence need not show every element in the definition of the charged crime (e.g., the predicate felony in a felony murder).
Green's death and the fact that he died as the result of criminal activity were *729 established independent of Defendant's confession. Therefore, under the corpus delicti rule we must consider whether Defendant's confession was corroborated with sufficient evidence to insure that his confession was trustworthy.
The trustworthiness of Defendant's confession was established in part by independent physical evidence at the scene of the murder, i.e., two sets of bloody footprints were identified at the scene and a fingerprint behind the bar in the lounge matched Defendant's. Investigations of prior criminal activity at and in the area of the Green Oaks Lounge, i.e., a burglary had occurred at the lounge approximately two weeks earlier and Defendant's fingerprints were found at the site of a recent residential burglary in the neighborhood of the Green Oaks Lounge, initially led investigators to Defendant. Testimony of independent witnesses corroborated Defendant's confession: Defendant's roommate testified that he and Hebert had come in at 3:50 a.m. on October 2, 1992; a neighbor in Defendant's apartment complex turned over to police at the time of his arrest a shopping bag that Defendant had given her shortly before he was arrested; the contents of the shopping bag, including $600.00 in cash and receipts showing the items therein had been purchased the morning of October 2, 1992. Additionally, there was testimony by two taxi drivers that corroborated details of Defendant's and Hebert's actions following the murder. Taxi driver, Stewart Holloway, testified that he picked up two men at approximately 2:15 a.m. on October 2, 1992, at the Mimosa Place Apartments on Guilbeau Road. Mr. Holloway remembered that one of the men had blood all over his shirt. He drove the men to the Travel Lodge Motel on Pinhook Road in Lafayette. Another taxi driver, Joyce Gallien Andrus, testified that she picked up two men from the Travel Lodge Motel at 3:30 a.m. on October 2, 1992, and drove them to an apartment complex on Guilbeau Road. At approximately noon that same day, Ms. Andrus picked up the same two men at the Acadiana Mall and drove them to the same apartment complex that she had brought them to earlier.
Defendant was not convicted on the basis of his confession alone. Evidence independent of Defendant's confession established the murder of Green. Evidence of a robbery in the vicinity of the lounge led police to Defendant. Testimony of independent witnesses placed Defendant in the vicinity of the murder shortly after the murder occurred. Physical evidence linking Defendant to the murder was obtained independently of and as a result of Defendant's confession. The evidence presented at Defendant's trial was sufficient to allow the jury to find that the elements of first degree murder had been established beyond a reasonable doubt.
This assignment is without merit.

Suppression of Defendant's Confession
Defendant also assigns as error the denial of his motion to suppress his confession. This ruling has been reviewed four times by this court. We first denied the motion in an unpublished writ in the matter of State v. Gaspard, bearing docket number 95-1643 (La.App. 3 Cir. 1/25/96). On remand from the supreme court, the matter was again reviewed and denied. Gaspard, 95-1643 (La.App. 3 Cir. 5/8/96); 685 So.2d 151. Thereafter, the supreme court granted Defendant's writ application and remanded the case to the trial court for retrial of the motion to suppress. State v. Gaspard, 96-1390 (La.6/28/96); 675 So.2d 1100. The trial court again denied the motion to suppress, and Defendant's writ application was denied in an unpublished opinion. Gaspard, 96-1279 (La.App. 3 Cir. 12/3/96). The supreme court again granted Defendant's writ application and remanded the matter to this court for briefing, argument, and an opinion. Gaspard, 96-2999 (La. 12/30/96); 684 So.2d 954. Once again, the motion to suppress was denied by this court. Gaspard, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213. The supreme court also denied *730 writs. Gaspard, 98-0582 (La. 7/2/98); 724 So.2d 202.
A defendant may seek review of a pretrial ruling by the trial court on appeal even after the denial of a pretrial supervisory writ application seeking review of the same issue. State v. Magee, 93-643 (La. App. 3 Cir. 10/5/94); 643 So.2d 497. However, when the defendant does not present any additional evidence in connection with the appellate review of the pretrial ruling of the court, the issue can be rejected. State v. Hebert, 97-1742 (La.App. 3 Cir. 6/3/98); 716 So.2d 63, writ denied, 98-1813 (La.11/13/98); 730 So.2d 455.
As in Hebert, Defendant presented no additional evidence concerning his detention, confession, and arrest at the trial of this matter. There has been no change in the law concerning detention, confessions, and arrests that would change the outcome of our previous opinions. Accordingly, we find this assignment without merit.

Grand Jury Indictment
Defendant contends that the trial court erred in denying his motion to quash the grand jury indictment based upon alleged discrimination in the selection of the grand jury foreperson. This issue was addressed in State v. Guillory, 97-179, p. 22 (La.App. 3 Cir. 3/11/98); 715 So.2d 400, 413-414, writ denied, 98-955 (La. 10/9/98); 726 So.2d 17 (citations omitted; emphasis added):
[T]he total percentage of a particular minority in the general population does not have a direct bearing on the makeup of the general venire, from which the grand jury venire is randomly drawn, and the grand jury foreman is selected. Rather, it is the percentage of the particular minority in the general population who are either licensed drivers or registered voters, and who meet the five qualifications necessary to become a juror, which is the appropriate percentage to compare with the actual percentage of minority grand jury foremen.
Therefore, in order to make a prima facie showing of discrimination in the selection of a grand jury foreman, the defendant must show a disproportion over a significant period of time between the percentage of an identifiable minority in the general venire or grand jury venire, and the percentage of minority forepersons during that time; and that the selection process is susceptible of abuse. That is, the defendant must show that the percentage of minority persons in the general population who are qualified to serve as grand jurors is disproportionate to the actual number of minority grand jury forepersons over a significant period of time to establish a prima facie case.

At the hearing on the motion to quash the grand jury indictment, the trial court heard testimony from the registrar of voters and the jury management coordinator for the Lafayette Parish Clerk of Court. The registrar's testimony confirmed only one black grand jury foreman between 1963 and 1992, the year of Defendant's indictment; another black foreperson served between 1992 and 1994. There were three other forepersons who may have been black, but the registrar's records could not confirm their race.
The jury manager's testimony covered the period since 1984, when she began keeping relevant statistics. At that point, prospective grand jurors were drawn from a list of registered voters and licensed drivers. Subsequently, the pool was narrowed to registered voters, then re-expanded to include licensed drivers again. Potential grand jurors are selected in groups of 100 using a random number generator. Statistics maintained by the jury manager showed that of the prospective grand jurors subpoenaed, only 42% to 43% were qualified to serve as grand jurors. No evidence presented at the hearing showed that the percentage of black persons in the general population who were qualified to serve as grand jurors was disproportionate to the actual number *731 of minority grand jury forepersons. This evidence was insufficient to meet Defendant's burden of proof, as established by Guillory.
This assignment lacks merit.

Decree
Defendant's conviction and sentence are affirmed. The trial court is directed to inform Defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file into the record proof of his receipt of said notice.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.